IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 20–cv–02173–KMT

JOCELYN CONRAD,

    Plaintiff,

v.

OWNERS INSURANCE COMPANY,

    Defendant.

---

# ORDER

---

This matter is before the court on "Defendant's Motion to Exclude Testimony of John Kezer, Esq." [Doc. No. 31] ("Mot."), filed August 23, 2021.  Plaintiff filed her Response on September 24, 2021 [Doc. No. 38], and Defendant filed a Reply on October 8, 2021 [Doc. No. 39].  Defendant asserts certain opinion testimony of expert John Kezer should be stricken because it contains improper conclusory legal opinions.  Additionally, Defendant argues that Mr. Kezer should be prohibited from offering opinion testimony concerning the duty of good faith and fair dealing because there is no independent claim that Defendant breached this duty.

First, to the extent Defendant objects to the generalized statements that are contained in "Plaintiff's Amended Expert Witness Disclosures" (Mot., Ex. A) rather than to the opinions set forth in Mr. Kezer's May 26, 2021 Export Report (Mot., Ex. B, hereinafter "Kezer Report"), the court finds the motion to be lacking in specificity.  (See Mot. at 7–8.)  Expert disclosures, by

their very nature, are drafted by lawyers and designed to satisfy the requirements of Fed. R. Civ. P. 26(a)(2)(B), not Fed. R. Evid. 702.  To the extent the Defendant has failed to parse the opinions set forth in the Kezer Report into those it considers objectionable, the court declines to do the dissection for it.  However, to avoid the wasted effort of additional briefing and further judicial review, the court will address those issues that are obvious in the context of Mr. Kezer's report.

## LEGAL STANDARD

As Fed. R. Evid. 702 makes clear, while required, it is not sufficient that an expert be qualified based upon knowledge, skill, experience, training, or education to give opinions in a particular subject area.  Here, the parties do not appear to contest that Mr. Kezer, an experienced attorney and former Colorado Commissioner of Insurance, is qualified on these preliminary matters.  (See Kezer Report at Section II.)  Nonetheless, the court must "perform[ ] a two-step analysis."  *103 Inv'rs I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006).  The law requires that after determining whether the expert is qualified, the proffered opinions must be assessed for reliability and relevancy.  *George v. Metro. Prop. & Cas. Ins. Co.*, No. 18–CV–01663–PAB–SKC, 2020 WL 70424, at *1–2 (D. Colo. Jan. 2, 2020).  *See also* Fed. R. Evid. 702 (requiring that the testimony be "based on sufficient facts or data," be the "product of reliable principles and methods," and reflect a reliable application of "the principles and methods to the facts of the case").

Rule 702 imposes on the district court a "gatekeeper function to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.' " *United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004) (quoting *Daubert v. Merrell Dow Pharm., Inc.*,

509 U.S. 579, 589 (1993)). To perform that function, the court must "assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (citing *Daubert*, 509 U.S. at 592–93). Where an expert witness relies on experience, the expert "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014) (quoting Fed. R. Evid. 702 advisory committee's notes to 2000 amendments). When examining an expert's method, however, the inquiry should not be aimed at the "exhaustive search for cosmic understanding but for the particularized resolution of legal disputes." *Daubert*, 509 U.S. at 597. It is the specific relationship between an expert's method, the proffered conclusions, and the particular factual circumstances of the dispute that renders testimony both reliable and relevant.

In addition to the witness having appropriate qualifications and methods, "the proponent of the witness' opinions must demonstrate that the process by which the witness derived his or her opinions is reliable." *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1220 (D. Colo. 2008). "[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Ultimately, the test requires that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.*

While the proponent of the challenged testimony has the burden of establishing admissibility, the "proffer is tested against the standard of reliability, not correctness," *see*

*Allstate Sweeping, LLC v. City & Cnty. of Denver*, No. 10–cv–00290–WJM–MJW, 2011 WL 2173997, at *3 (D. Colo. June 2, 2011), the proponent need only prove that "the witness has sufficient expertise to choose and apply a methodology, that the methodology applied was reliable, that sufficient facts and data as required by the methodology were used and that the methodology was otherwise reliably applied," *Crabbe*, 556 F. Supp. 2d at 1221.

Finally, and most germane to the issue at bar, assuming that the standard for reliability is met, the court must also ensure that the proffered testimony will assist the trier of fact. *See Kumho Tire*, 526 U.S. at 156–57; *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122–23 (10th Cir. 2006). "Relevant expert testimony must logically advance[ ] a material aspect of the case and be sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (quotations and citations omitted). In assessing whether expert testimony will assist the trier of fact, the court should also consider "whether the testimony 'is within the juror's common knowledge and experience,' and 'whether it will usurp the juror's role of evaluating a witness's credibility.' " *Id.* at 476–77.

## ANALYSIS

### A.   Permissible Expert Opinion verses Impermissible Legal Opinion

In insurance bad faith cases, expert witnesses are permitted to testify about relevant legal standards. "[A]n expert's testimony is not *per se* inadmissible simply because it requires discussion of the law." *Amica Life Ins. Co. v. Wetz*, No. 15–cv–1161–WJM–CBS, 2017 WL 897839, at *3 (D. Colo. Mar. 7, 2017). "[A] witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms." *Specht v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988). Such testimony

4

> is proper under Rule 702 if the expert does not attempt to define the legal parameters within which the jury must exercise its fact-finding function. However, when the purpose of testimony is to direct the jury's understanding of the legal standards upon which their verdict must be based, the testimony cannot be allowed.

*Id.* at 809–10.  Testimony that "articulates the ultimate principles of law governing the deliberations of the jury" is inadmissible." *Id.* at 808.  While an expert may refer to the law in expressing his or her opinion, the expert "may not state legal conclusions drawn by applying the law to the facts."  *A.E. ex rel. Evans v. Indep. Sch. Dist. No. 25*, 936 F.2d 472, 476 (10th Cir. 1991) (citations omitted).

Mr. Kezer is an expert on insurance industry standards and therefore he may testify as to insurance industry standards based on his experience working in the insurance industry.  (Kezer Report, Section II.)  *See O'Sullivan v. Geico Cas. Co.*, 233 F. Supp. 3d 917, 928 (D. Colo. 2017).  Identifying insurance industry claim handling standards does not generally require extensive discussion of public policy or legislative intent as such discussion may divert the jury's attention from the insurance industry standards themselves or suggest that, even if an insurance company did not violate such standards, the jury should use public policy or legislative intent to determine liability.  *See Gebremedhin v. Am. Family Mutual Ins. Co.*, No. 13–cv–02813–CMA–NYW, 2015 WL 4979742, at *6 (D. Colo. Aug. 21, 2015) (excluding insurance industry expert's opinions that "[did] not even refer to, let alone explain, industry standards").

While Mr. Kezer is permitted to testify as to insurance industry standards and may testify that defendant's conduct did not conform with those standards, he may not apply legal standards from caselaw or statutes to state an opinion that defendant's conduct violated caselaw or statutes. *Sands v. Integon Nat'l Ins. Co.,* No. 18–CV–00714–PAB–NYW, 2020 WL 7027442, at *4 (D.

Colo. Nov. 30, 2020). Additionally, Mr. Kezer will not be permitted to "state legal conclusions drawn by applying the law to facts," *A.E. ex rel. Evans*, 936 F.2d at 476, because "such ultimate conclusions would not be helpful to the jury and would improperly intrude on its fact-finding function," *O'Sullivan*, 233 F. Supp. 3d at 929 (excluding opinions that an insurance company's conduct violated the UCSPA).

Germaine to this motion in particular, is Mr. Kezer's interpretation of the Unfair Claim Settlement Practices Act at Colo. Rev. Stat. § 10–3–1104(1)(h). (Kezer Report at 7 and 19 at § 3.) Obviously, these provisions are statutory, not just industry standards. The provisions of the statute obviously, however, inform the "standards" because the provisions are the law by which all insurance companies in Colorado are governed. Mr. Kezer may not opine whether defendant violated statutes, but may testify whether, in his opinion, defendant's conduct conformed with specific insurance industry standards, <u>including ones identified in those statutes</u>. *See O'Sullivan*, 233 F. Supp. 3d at 928 (excluding opinions that an insurance company's conduct violated the UCSPA). In *O'Sullivan*, the court ruled the expert could offer opinions whether the defendant's conduct "differed, in factual terms, from the practices of other insurers" or from "relevant industry practices and standards," but could not opine about whether the defendant's conduct "was unlawful or 'egregious' " *Id.* In his report, Mr. Kezer reviews plaintiff's case file, analyzes Defendant's handling of the claim, and sets out the bases for his opinions. Taken as a whole, the opinions of Mr. Kezer, which are enumerated in Section IV of the Kezer Report, are sufficiently grounded by reference to specific factual observations and then linked by Mr. Kezer to industry standards, which are themselves, by both reason and necessity, linked to statutes, rules, and legal extrapolation. Although it is a thin line, Mr. Kezer appears to have stayed within

the line's permissible boundaries.  To the extent that trial testimony should run afoul in any respect, such testimony could be cured by timely objection and limiting instructions.

### B.     Contractual Duty of Good Faith and Fair Dealing

Plaintiff's Complaint contains a claim seeking UIM benefits under the provisions of the parties' acknowledged insurance contract and a claim for alleged violation of Colo. Rev. Stat. § 10–3–1115.  (Complaint [Doc. No. 4].)  Under Colorado law, a covenant of good faith and fair dealing is implied in every contract.  *See Colorado Interstate Gas Co., Inc. v. Chemco, Inc.,* 833 P.2d 786, 792 (Colo. App. 1991).  It is well-settled that there is an implied covenant of good faith and fair dealing inherent in every insurance contract, just as there is in every other type of contract.  *See Brennan v. Farmers Alliance Mut. Ins. Co.,* 961 P.2d 550, 556 (Colo.App. 1998); *see also* Colo. Rev. Stat. § 10–1–101 (declaring that persons providing insurance services to the public must "be at all times actuated by good faith"). Defendant argues, in spite of Plaintiff's breach of contract claim, that the covenant of good faith and fair dealing is not at issue in this case because no separate "common law bad faith claim" was brought.  (Reply at 7.)

The implied duty of good faith and fair dealing does not inject substantive terms into the parties' contract.  *Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.,* 872 P.2d 1359, 1362 (Colo. App. 1994) (citation omitted).  Further, a breach of this covenant does not necessarily, or even generally, give rise to an independent tort claim; rather, it "is included in the breach of contract claim." *Id.*  Colorado has, of course, recognized a separate cause of action sounding in tort for bad faith breach of *insurance* contract, should such a claim be separately raised.  *See In re Mullaney,* 179 B.R. 942, 945 (D. Colo. 1995).  Without the separately raised tort claim, however, the covenant is still part of the contract and the inherent duty requires only that the

7

parties perform in good faith the obligations imposed by their agreement.  *Id.*  Unless a claim is otherwise brought for a remedy in tort, "[i]f a party breaches the implied covenant of good faith and fair dealing, the result is merely a breach of contract with standard [contract] remedies." *Mike Naughton Ford, Inc. v. Ford Motor Co.*, 862 F. Supp. 264, 272 (D. Colo. 1994) (internal citations omitted).  *See also Duffield v. First Interstate Bank of Denver, N.A.,* 13 F.3d 1403, 1406 (10th Cir.1993) (implied covenant of good faith and fair dealing exists even where contract terms are unambiguous).

Broadly speaking, "[t]his duty of good faith and fair dealing continues unabated during the life of an insurer-insured relationship, including through a lawsuit or arbitration between the insured and the insurer." *Sanderson v. American Family Mut. Ins. Co.,* 251 P.3d 1213, 1217 (Colo. App. 2010); *Rabin v. Fid. Nat. Prop. & Cas. Ins. Co.*, 863 F. Supp. 2d 1107, 1112 (D. Colo. 2012).  The court, therefore, rejects Defendant's claim that Mr. Kezer's opinion testimony concerning breach or noncompliance with a duty of good faith and fair dealing are irrelevant given the breach of contract claim brought in this litigation.  If otherwise supported, the court finds these opinions to be relevant to the case.

Further, the opinions are not inadmissible under Fed. R. Evid. 403.  The Rule states

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

*Id*.  Defendant's argument is that "[t]he risk of undue prejudice and juror confusion that comes from an expert . . . is particularly acute when, as here, the expert witness is an attorney and former Colorado insurance commissioner."  (Reply at 2.)  In essence, the argument is that Mr. Kezer is so extremely well-qualified, there is danger in allowing him to testify because the jury is

likely to find his opinion testimony both very helpful and very persuasive. Since Mr. Kezer's opinions are contrary to Defendant's view of the case, the court agrees that his testimony is likely to be prejudicial to the Defendant's position. However, this is the prejudice which is inherent in all <u>relevant</u> evidence. It is only <u>unfair</u> prejudice that is prohibited. The court finds that Mr. Kezer's opinion testimony about the duty of good faith and fair dealing inherent in the insurance contract at issue, which is otherwise admissible under Rules 702, 703 and 704, is not unfairly prejudicial.

It is therefore **ORDERED**

"Defendant's Motion to Exclude Testimony of John Kezer, Esq." [Doc. No. 31] is **DENIED**.

Dated November 12, 2021.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge